UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Aisha Tyler, individually and on behalf of all
others similarly situated,

      Plaintiff,

v.

Timothy E. Baxter & Associates, P.C.,

      Defendant.
_____/

Case No. 17-13740

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, MOTION TO COMPEL ARBITRATION [23]**

This matter is before the Court on Defendant's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) or, in the alternative, motion to compel arbitration. (Docket 23.) Plaintiff's complaint arises from allegations that Defendant violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq. Plaintiff filed a response to Defendant's motion and Defendant filed a reply. (Dkts. 26, 28.) The Court heard Defendant's motion on September 26, 2018.

**I.    FACTS**

Plaintiff alleges that Defendant, a law firm located in Farmington Hills, Michigan, is a "debt collector" as defined in the FDCPA, 15 U.S.C. § 1692a(6). Plaintiff alleges that on or about November 18, 2016, Defendant sent a collection letter to Plaintiff "regarding an alleged debt originally owed to an unknown creditor." (Compl. ¶ 18, Ex. A.) The collection letter dated November 18, 2016, showed an "Amount Claimed Due" of $1,022.77, yet next

to the line "Creditor To Whom The Debt Is Owed," no creditor was identified--the space was blank--and the creditor to whom the debt was owed was not otherwise identified in the letter. (Compl. ¶¶ 20, 21, *Id.*) Plaintiff claims that this was a violation of the FDCPA, 15 U.S.C. § 1692g, which requires the debt collector, in the initial communication or within five days of the initial communication, to identify the name of the creditor to whom the debt is owed. Plaintiff alleges Defendant failed to do so. (Compl. ¶¶ 42-44.) Plaintiff brings this case as a proposed class action under Fed. R. Civ. P. 23. Defendant moves for judgment on the pleadings, seeking to dismiss Plaintiff's claim for lack of standing. In the alternative, Defendant seeks to enforce an arbitration provision contained in the cardholder agreement with the credit card from which the subject debt originated.

## II. LEGAL STANDARD

Defendant seeks a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), arguing that Plaintiff has failed to allege that she sustained any actual harm and therefore does not have standing under Article III. "Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation." *National Org. For Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994). "The standard of review applicable to a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is the same de novo standard applicable to a motion to dismiss under Rule 12(b)(6)." *Ziegler v. IBP Hog Mkt., Inc.,* 249 F.3d 509, 511-12 (6th Cir. 2001) (citing *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir. 1999)). "In reviewing the motion, we must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Id.* at 512.

**III. ANALYSIS**

**A. Whether Plaintiff Has Standing to Bring This Cause of Action**

Defendant does not dispute that it sent the November 18, 2016 collection letter without identifying the creditor. Defendant avers that the "field immediately following the words 'Creditor To Whom The Debt Is Owed' was unintentionally left blank." (Def.'s Mot. 1, dkt. 23.) Instead, Defendant argues that Plaintiff has not alleged any actual injury and therefore has not demonstrated Article III standing. Defendant asserts that on December 7, 2016, Defendant "sent a corrected letter to Plaintiff that included the name of the creditor to whom the debt was owed: MSW Capital, LLC." (Def.'s Mot. 1, dkt. 23.) Plaintiff responds that a motion to dismiss may not consider "matters outside the pleadings." *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). Plaintiff's complaint does not allege receiving a second letter[1]. (Pl.'s Resp. n. 1, dkt. 26.) Yet Defendant provided the December 7, 2016 collection letter as an exhibit to its Answer and referred to it in the Answer, therefore, it is part of the pleadings. *See Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007); *see also* Def.'s Answer, Ex. 1, dkt. 4-1; Answer ¶¶ 20, 21. "[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss. In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr.,* 508 F.3d at 335-36. The Court may consider it.

---

[1]In her response brief she alleges that "[a]s part of Defendant's argument, it claims that it mailed the Plaintiff a subsequent collection letter, this one bearing the creditor's name (a claim Plaintiff denies)." (Pl.'s Response 1, dkt. 26.)

Plaintiff alleges that "[t]he FDCPA gives consumers a statutory right to receive certain information, including the name of the creditor to whom the debt collector is attempting to collect for, which the Plaintiff was deprived of in this case" and "[a]s a result of Defendant's violations of the FDCPA, the Plaintiff was harmed." (Compl. 28, 29.) The FDCPA, 15 U.S.C. § 1692g, specifically provides that

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing-- . . . (2) the name of the creditor to whom the debt is owed.

15 U.S.C. § 1692g(a)(2).

Defendant relies on the Supreme Court's recent decision in *Spokeo v. Robins*, 136 S. Ct. 1540 (2016), to allege that Plaintiff has not shown a concrete injury and therefore does not have standing under Article III. *Spokeo v. Robins* arose under the Fair Credit Reporting Act of 1970 (FCRA). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549. The "'irreducible constitutional minimum' of standing consists of three elements." *Id.* at 1547. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person

4

> to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

*Id.* at 1549.

The Supreme Court found that the circuit court's standing analysis "failed to fully appreciate the distinction between concreteness and particularization" and failed to "address the question framed by our discussion, namely, whether the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement." *Id.* at 1550. Yet *Spokeo* does not foreclose the possibility that the "violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," where the plaintiff "need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549.

Defendant relies on a post-*Spokeo* case from the Middle District of Alabama that is very similar to the facts herein. *See Yeager v. Ocwen Loan Servicing, LLC*, 237 F. Supp. 3d 1211, 1214 (M.D. Ala. 2017). In *Yeager* the first of two collection letters to a debtor, sent March 15, 2013, did not contain any of the information required under 15 U.S.C. § 1692g, including the name of the creditor. *See id.* at 1214. The servicer sent a corrected letter on April 2, 2013, containing the required information. *See id.* The debtor sued claiming that he did not timely receive the validation notice. *See id.* at 1215. The court determined that the debtor did not allege any harm or material risk of harm beyond the statutory violation and the court concluded that the debtor did not sustain a concrete injury that would confer Article III standing. *See id.* at 1218. "The court need not reach whether any FDCPA validation-notice delay, no matter how long, would fail to support standing. It is merely

5

saying that a delay as brief as the one alleged by the [plaintiffs], without any attendant harm or material risk of harm, does not." *Yeager*, 237 F.Supp.3d at 1218 n.6. Here there is a similar delay, approximately 19 days, between sending the incorrect or incomplete letter and the corrected letter.

*Yeager* is consistent with the additional cases applying *Spokeo* within the Sixth Circuit on which Defendant relies. They are largely cases in which the courts found that the plaintiffs failed to plead facts that would allow even an inference of a concrete injury. For example, in *Hagy v. Demers & Adams*, 882 F.3d 616, 618-19 (6th Cir. 2018), the plaintiffs defaulted on a loan for a mobile home and property and settled the claim by executing a warranty deed in lieu of foreclosure. *See id.* at 619. The attorney defendant sent a letter to the plaintiffs' lawyer confirming receipt of the deed and reaffirming that the mortgage servicing company "will not attempt to collect any deficiency balance which may be due and owing after the sale of the collateral." *Id.* at 619. The letter "'fail[ed] to disclose' that it was a 'communication . . . from a debt collector' in violation of the federal law" as required by 15 U.S.C. § 1692e(11). *Id.* The Sixth Circuit noted that while the FDCPA "protects consumers from abusive debt collection practices" and the "disclosure requirement serves that purpose," the plaintiffs "have not shown, in truth have not even tried to show, that this failure to disclose caused them any actual harm beyond that 'bare procedural violation.'" *Id.* at 621-22. "They do not say that the non-disclosure created a risk of double payment, caused anxiety, or led to any other concrete harm. On this record, it is difficult to see--and we cannot see--how the June 30 letter did anything other than help the [plaintiffs]." *Id.* at 622. The Sixth Circuit concluded that "[b]ecause Congress made no effort to show how a letter like this would create a cognizable injury in fact and because we cannot see any way

in which that could be the case, we must dismiss this claim for lack of standing." *Id.* at 623; *see also Johnston v. Midland Credit Management*, 229 F. Supp. 3d 625, 628-33 (W.D. Mich. 2017) (The creditor's letter to debtor offered three repayment options and one of the three contained an "error" where the letter incorrectly stated the debtor could make monthly payments of $0.00. The debtor called to accept the $0.00 option and was told it was in error; the debtor then sued the creditor alleging the letter was false, deceptive or misleading under the FDCPA. The court concluded that the plaintiff failed to plead sufficient facts to allow an inference of a concrete injury and that even the least sophisticated consumer would realize that the letter contained an error.). Defendant argues that, like the cases it cites, Plaintiff did not sustain any actual harm; Plaintiff only suffered a "delay in receiving the identity of the creditor" until the corrected letter was sent on December 7, 2016. (Def.'s Mot. 11, dkt. 23.)

Plaintiff responds that "in the past two years since the issuance of the *Spokeo* decision, a general consensus has emerged that consumers whose FDCPA rights have been violated have Article III standing to pursue redressability for the harm they have suffered." (Pl.'s Resp. 15.) Plaintiff cites numerous cases from other circuits in lengthy string citations and smaller type size than allowed by Local Rule 5.1. It is worth noting that the bulk of cases cited by Plaintiff are from outside the Sixth Circuit and some pre-date *Spokeo*. Many of Plaintiff's cases are distinguishable by facts including the pleading of claims and allegations directly related to harms the statutes were meant to address, the allegation of misleading information or deceptive communications, and cases in which there is no allegation that missing information was later corrected or provided. *See Ricketson v. Experian Info. Solutions, Inc.*, 266 F.Supp.3d 1083, 1086-90 (W.D. Mich. 2017) (Arising

7

under the Fair Credit Reporting Act (FCRA), the defendant failed to investigate and remove an inaccurate car loan delinquency on the plaintiff's credit report when notified by the plaintiff; the dispute was ultimately removed from the plaintiff's credit report, though the defendant never informed the plaintiff. The plaintiff claimed emotional distress, and that he was "not provided with any prescreened credit offers as a result of the negative tradeline and did not apply for an automotive loan because he believed he was not eligible for credit on reasonable terms." *Id.* at 1091. The district court considered *Spokeo*, and concluded that "[p]laintiff's claim relates directly to harms the FCRA was meant to address—the risk of inaccurate information in a consumer's file and the inability of consumers to correct that information and receive assurance from a [credit reporting agency] after reinvestigation." *Id.* at 1089. The plaintiff's allegations presented a "degree of risk sufficient to satisfy Article III's injury-in-fact requirement."*Id.* at 1091.); and *Martin v. Trott Law, P.C.*, 265 F.Supp.3d 731, 747-48 (E.D. Mich. 2017) (Including claims for violations of the FDCPA, the claims that survived an initial round of motions included an allegation that the letters violated the FDCPA because they purported "to be sent by an attorney, but in reality were sent by administrative personnel without any attorney review or supervision." *Martin v. Trott Law, P.C.*, 198 F.Supp.3d 794, 800 (E.D. Mich. 2016). The plaintiffs "adequately have alleged and seek to recover for a distinct injury to their statutory right: They contend that they were *deceived* by the information presented to them by the defendants, and *misled* about the extent of their debts and the status of legal proceedings related to collection of them." *Martin*, 265 F.Supp.3 at 747. The court noted that there was a "'real risk of harm' in such a situation that a debtor presented with such deceptive communications, deprived of an accurate understanding of his situation by the defendants' misinformation, could make

decisions detrimental to his personal financial position or legal rights that he otherwise would make, if he were fully and accurately informed." *Id.* at 748. The court found that the consumers had Article III standing to pursue an FDCPA claim.  and distinguished *Martin* from a case like *Johnston v. Midland Credit Management*, where the *Johnston* letter contained "certain obviously counter-factual and confusing statements" yet the "amount of the debt stated was accurate, and the plaintiff could not have been misled by the letter about his legal rights or obligation to pay the amount owed." *Id.* at 749.).[2]

In *McLain v. Head Mercantile Co., Inc.*, 2017 WL 3710073 (M.D. La. Aug. 28, 2017), a case from the Middle District of Louisiana, the plaintiff "alleged sufficient injury to confer standing: she received a debt collection that she alleges to be in violation of the FDCPA

---

[2]Among other cases on which Plaintiff relies, the Sixth Circuit disagreed with *Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990 (11th Cir. July 6, 2016). In *Lyshe v. Levy*, 854 F.3d 855 (6th Cir. 2017), the Sixth Circuit cited several reasons for declining to follow *Church*: first, it is an unpublished decision; second, the reasoning appeared to have been rejected months later by the Eleventh Circuit in a published decision dealing with a violation of a state law procedural rule; finally, the *Church* approach is "against the weight of the authority of our sister circuits." *Lyshe v. Levy*, 854 F.3d 855, 860-61 (6th Cir. 2017); *see also Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018) ("At this point, it is not even clear whether the *Church* theory remains good law in the Eleventh Circuit. We know of no circuit court decision since *Spokeo* that endorses an anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III standing. Although Congress may 'elevate' harms that 'exist' in the real world before Congress recognized them to actionable legal status, it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is."). *Mabary v. Home Town Bank, N.A.*, is a 2014 Fifth Circuit case predating *Spokeo*, and the opinion was later withdraw at the parties' request. *See Mabary v. Home Town Bank, N.A.,* 771 F.3d 820 (5th Cir. 2014), *opinion withdrawn* (Jan. 8, 2015). *Wendt v. 24 Hour Fitness USA, Inc.*, 821 F.3d 547, 552 (5th Cir. 2016), is not instructive. It arose under the Texas Health Spa Act, and the court specifically noted that cert was recently granted in *Spokeo* to consider "whether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm" and that "[t]his case does not implicate that question because, for the reasons explained below, the Texas legislature has not authorized a private right of action based on a bare violation of the Act."

in two material respects: first, that it was deceptive and misleading because it failed to clearly identify the sender, and second, that it charged a voluntary convenience fee in connection with one method of collection of payment when the collection of same was not authorized by law or contract." *Id.* at *15. This case is distinguishable in that there is no evidence that the plaintiff eventually received accurate information or information in compliance with the FDCPA and involved unauthorized fee information.

At the hearing, Plaintiff argued that the Sixth Circuit's recent opinion in *Macy v. GC Services Limited Partnership*, finding that a collection letter deficiency equated to concrete injury, is on point. *See Macy v. GC Services Limited Partnership*, 897 F.3d 747 (6th Cir. 2018). Yet the letters at issue in *Macy* provided "misleading information about the manner in which the consumer can exercise the consumer's statutory rights to obtain verification of the debt or information regarding the original creditor," failing to mention the consumer should notify the debt collector "in writing" that the debt or a portion thereof is in dispute. If the consumer disputed the debt by telephone, he or she "loses most of the protections for debtors" which would have been available had the dispute been made in writing. *Id.* at 758. The *Macy* plaintiffs alleged "a risk of harm that is traceable to [the defendant's] purported failure to comply with federal law, namely, the possibility of an unintentional waiver of FDCPA's debt-validation rights, including suspension of collection of disputed debts under Section 1692g(b)." The Court's findings here are not inconsistent with *Macy*.

Plaintiff's sole allegations related to injury are that "[t]he FDCPA gives consumers a statutory right to receive certain information, including the name of the creditor to whom the debt collector is attempting to collect for, which the Plaintiff was deprived of in this case" and "[a]s a result of the Defendant's violations of the FDCPA, the Plaintiff was harmed."

(Compl. ¶¶ 28, 29, dkt. 1.) Much like the "$0.00" amount in *Johnston*, the blank spot where the creditor's name should have appeared could have indicated obvious error; it did not provide inaccurate or misleading information. Like *Hagy*, Plaintiff does not even attempt to show that the failure to identify the creditor in the first correspondence caused any harm beyond a procedural violation-- there is no allegation that it caused additional worry or anxiety, risk of overpayment or any other concrete harm. Like *Yeager v. Ocwen Loan Servicing,* 237 F.Supp.3d 1211 (M.D. Ala. 2017), Plaintiff's allegations are a "mere procedural violation." This Court does not opine on what effect a longer delay or specific allegations of injuries would have on this same analysis. Here, the missing information appeared in a document that was otherwise complete with respect to the debt information, no misleading or incorrect creditor was listed and a correct letter was sent within a few weeks. The procedural violation alleged by Plaintiff did not entail a degree of risk sufficient to satisfy the concreteness requirement of an injury-in-fact and Plaintiff has failed establish Article III standing.

### B. Whether Plaintiff's Claim Is Subject To Arbitration

#### 1. Whether Defendant Can Compel Arbitration Pursuant to the Cardholder Agreement

Defendant argues that if the Court does not dismiss this action, then it must compel arbitration. Although the Court grants Defendant's motion to dismiss, it is worth touching on Defendant's request to compel arbitration. Defendant argues that the parties "clearly have a valid Arbitration Agreement" that "covers claims arising out of any communications relating to Plaintiff's account or the collection of Plaintiff's account, which certainly covers this action." (Def.'s Mot. 16-17.) Plaintiff responds that Defendant has not established that

the arbitration agreement is applicable to Plaintiff or that Defendant has the ability to enforce the agreement.

Of the four factors the Sixth Circuit sets forth for considering a motion to compel arbitration Defendant has not provided allegations or evidence on which to base a finding under the first factor: a determination that the parties agreed to arbitrate. *See Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005).

Defendant alleges that the subject debt originated with a Credit One Bank, N.A. ("Credit One") credit card that was opened on May 19, 2009.[3] Defendant asks the Court to rely on *Fuller v. Frontline Asset Strategies, LLC*, No. 17-C-7901, 2018 WL 1744674 (N.D. Ill. Apr. 11, 2018), to determine that there is a valid agreement to arbitrate between Plaintiff and Defendant even where Credit One may have sold its interest in Plaintiff's account and/or another party was hired to collect the debt. However, unlike in *Fuller* where the defendants provided affidavits to establish that Credit One sold the interest and title in the plaintiff's account and to whom, as well as the affidavit of a records custodian, Defendant has not met its burden to show that the arbitration agreement exists and whether and to whom it was validly assigned. *See id.* at *3; *see also Mims v. Global Credit & Collection Corp.*, 803 F.Supp.2d 1349, 1356 (S.D. Fla. 2011) (finding that the arbitration agreement did not apply to the dispute, where the defendant who was hired to collect on the account, Global, was "neither an assign of Capital One nor an authorized agent of Capital One, but

---

[3] In her responses to requests for admission Plaintiff admits to entering into a credit card agreement with Credit One, making purchases with the credit card issued by Credit One, and receiving monthly billing statements for and making payments on the Credit One credit card. (Response to Requests for Admission, Def.'s Mot. Ex. B, dkt. 23-2.) Defendant alleges that the use of the Credit One credit card was subject to a Cardholder Agreement containing an arbitration provision.

even if it was an authorized representative of EAF, the Court does not find the parties intended 'us' to include an authorized representative of an assign of Capital One.").

On the evidence before the Court at this time there is no basis to find that Defendant can compel arbitration pursuant to the Cardholder Agreement.

### 2. Whether Defendant has Waived Its Right To Compel Arbitration

Plaintiff also argues that Defendant waived its right to compel arbitration in this matter, where it filed two motions, opposed Plaintiff's request to be relieved of the local counsel requirement, served discovery and provided some discovery responses. (Pl.'s Resp. 20.)

The Sixth Circuit has explained that "a party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) 'delaying its assertion to such an extent that the opposing party incurs actual prejudice.'" *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012) (citation omitted). Defendant has not acted inconsistently with any reliance on its right to arbitrate. Defendant asserted arbitration as an affirmative defense stating "[t]hat Plaintiff's claims are barred by an agreement to arbitrate." (Affirmative Defenses ¶ 10, Answer, dkt. 4.) The docket supports Defendant's assertion that they have engaged in only minimal discovery to date, necessitated in part by Plaintiff's failure to allege in her Complaint that she had incurred any debt. ("Some time prior to November 18, 2016, an obligation was allegedly incurred to a client of the Defendant's." Compl. ¶ 13, dkt. 1.) As Defendant points out with respect to prejudice, the parties have engaged in only minimal discovery, thus minimizing prejudice to Plaintiff should this claim be arbitrated. Plaintiff does not identify any prejudice resulting from the delay in moving for arbitration.

The Court does not find that arbitration has been waived.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant's motion for judgment on the pleadings and grants Defendant's request to dismiss the claims against it.

**SO ORDERED.**

                         s/Nancy G. Edmunds
                         Nancy G. Edmunds
                         United States District Judge

Dated: October 18, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 18, 2018, by electronic and/or ordinary mail.

                         s/Lisa Bartlett
                         Case Manager